UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:

Bayou Shores, SNF, LLC,

    Debtor.
_____/

FLORIDA AGENCY FOR HEALTH CARE
ADMINISTRATION; AND
THE UNITED STATES OF AMERICA, ON
BEHALF OF THE SECRETARY OF
THE UNITED STATES DEPARTMENT
OF HEALTH AND HUMAN SERVICES,

    Appellants,

v.                                                         Case No: 8:14-cv-02816-T-30

BAYOU SHORES SNF LLC,

    Appellee.
_____/

**THE UNITED STATES' MEMORANDUM IN OPPOSITION
TO BAYOU SHORES' MOTION TO RENEW THE MOTION TO DISMISS
THE APPEALS FILED BY ACHA AND THE UNITED STATES**

Appellee Bayou Shores, SNF, LLC's (the "Appellee" or "Bayou Shores") untimely motion[1] to dismiss (the "Motion") the appeals of Appellants is simply a roadblock to prevent the Court from rendering an opinion on the merits of the Appellants' appeals. For this reason and others stated below, Appellant United States of America (the "United States"), on behalf of the Secretary of the United

---

[1] Bayou Shores' motion is stylized as Motion of Appellee, Bayou Shores, SNF, LLC, to Renew the Motion to Dismiss the Appeals filed by the Florida Agency for Healthcare Administration, and the United States of America, on Behalf of the Secretary of the United States Department of Health and Human Services. Doc. No. 61.

1

States Department of Health and Human Services, respectfully requests that this Court deny Bayou Shores' Motion and rule on the merits of its two pending appeals.

## PROCEDURAL AND FACTUAL BACKGROUND

On September 9, 2014, the United States filed a notice of appeal (the "United States' First Appeal") (Bankr. Doc. No. 88) [2] of the Bankruptcy Court's Order Granting Debtor's Motion to Enforce the Automatic Stay and/or for an Order, Pursuant to 11 U.S.C. § 105, Prohibiting Any Action to Terminate the Debtor's Medicaid and Medicare Provider Agreements, to Deny Payment of Claims, and/or to Relocate Residents (Bankr. Doc. No. 78).[3] Appellant Florida Agency for Health Care Administration ("ACHA") filed a notice of appeal ("ACHA's First Appeal," together with the United States' First Appeal, the "First Appeals.") of the same Order on October 7, 2014. Bankr. Doc. No. 156. The United States' First Appeal was fully briefed on December 29, 2014. On January 8, 2015, the United States' First Appeal was reassigned from Judge Whittemore to Judge Moody, who, in turn, consolidated the First Appeals into a single case. *See* Case No. 8:14-cv-02617-JDW, Doc. Nos. 17-18.

On January 13, 2015, the United States filed its notice of appeal (the "United States' Second Appeal") of the Bankruptcy Court's January 7, 2015 Order Finally Approving the First Amended Disclosure Statement and Confirming

---

[2] All references to the bankruptcy docket refer to Case No. 8:14-bk-0009521-MGW (M.D. Fla.).
[3] The United States' First Appeal was originally docketed as Case No. 8:14-cv-02617-JDW (M.D. Fla.).

the First Amended Plan of Reorganization Filed by Bayou Shores, SNF, LLC (the "Confirmation Order") (Doc. No. 285).[4]  Doc. No. 289.  On January 15, 2015, ACHA filed its notice of appeal ("ACHA's Second Appeal," together with the United States' Second Appeal, the "Second Appeals") of the Confirmation Order.[5]  Bankr. Doc. No. 330.

On January 29, 2015, Bayou Shores filed a motion to dismiss (the "First Motion to Dismiss") the First Appeals for lack of subject matter jurisdiction.[6]  Doc. No. 20.  In its First Motion to Dismiss, Bayou Shores argued, *inter alia*, that three of the four issues raised in the United States' First Appeal are constitutionally moot because Bayou Shores' plan of reorganization became effective on January 9, 2015.  *Id.* at pg. 2-3.  Bayou Shores argued that the remaining issue the United States appealed was equitably moot because Bayou Shores had substantially consummated its plan of reorganization.  *Id.* at 3.

On February 3, 2015, this Court held a hearing on the First Appeals and Bayou Shores' First Motion to Dismiss.  At the hearing, the Court had a lengthy colloquy with Bayou Shores' counsel about whether the United States' First Appeal was moot:

> MS. GREEN: The first we filed the motion to dismiss the first appeal.
>
> THE COURT: You did.

---

[4] The United States' Second Appeal was docketed as Case No. 8:15-cv-00103-T-30.
[5] ACHA's Second Appeal was docketed as Case No. 8:15-cv-00128-T-30.

> MS. GREEN: Because we believe that the first appeal was directly mooted out by the confirmation of the plan, because there were four issues on appeal, three are constitutionally moot, the other is equitably moot. And the government actually argues that the reason that it's not equitably moot is because they have recoupment rights because if the Judge improperly entered the order, then they should be entitled to recoupe all the money that they've paid since the beginning of the filing of the bankruptcy and entry of that order. The problem with that is that they've never taken that position. There was an administrative claims bar date in the Bankruptcy Court on December the 9th, they didn't file a claim, they didn't object to feasibility on the basis that there would be a recoupment, they saw all the projections and all the numbers --
>
> THE COURT: Well, let me just stop you. Maybe the Eleventh Circuit will use that argument to support my ruling, but I'm not really enamored with that. What I see, though, is the issues that you want to moot in the first appeal all rise again in the second appeal based on Judge Williamson's legal rulings. It's a legal issue.
>
> MS. GREEN: I think that the -- they're teed up a lot better in the second appeal, because I think that the record's more clear, I think the Judge wrote more, and I think that if either of the appeals are to go forward it should be the second appeal, because that's where the order on feasibility is, that's where the confirmed plan order is, that's where the description of why the Judge ruled the way he did is, not in this first appeal. And that was why I filed the motion to dismiss the first appeal, because I think that, if anything, if there's going to be an appeal heard, it should be based upon the entire record, on the confirmation order and –

Hr'g Tr. 34:1-35:12, Feb. 3, 2015 attached as Exhibit A ("February Hearing Tr.").

To alleviate Bayou Shores' concern that the Court hear the "entire record" before addressing the merits the United States' appeals, the Court suggested consolidating the First and Second Appeals:

4

> THE COURT: If I consolidate these appeals, then you certainly have the entire record, right?
>
> MS. GREEN: I suppose we would, but I don't know that we have actually briefed and argued the issues on the second appeal related to the confirmation and assumption of executory contract, so I don't know that we would have a full set to go up to the appellate court. We haven't even done the issues on appeal.
>
> THE COURT: So what effect does your confirmation of the plan and effective date have on the second appeal, if anything?
>
> MS. GREEN: Well, according to Your Honor, it doesn't have any, and I would be willing to accept that ruling, but I don't think that it's appropriate to send this up the way it is with just this first appeal. I think the first appeal is moot and that the second appeal will basically subsume all of those issues and that that will get us the record we need and the briefing we need and the issues on appeal that we need.
>
> …
>
> THE COURT: All right. Well, my inclination is to consolidate the appeals. And I think that puts all issues still at play. So having said that, do you want to file more briefs and put more stuff in the record? Because it's going to be an appeal one way or the other.
>
> MS. GREEN: Yes.
>
> MR. TERZO: I think so.

February Hearing Tr. 35:13-42:14.  In the Court's view, consolidation would mean that "all issues [are] still at play."  *Id.*

The Court further discussed with Bayou Shores' attorneys the issue of equitable mootness in the context of determining whether the Court should grant

5

the United States' Emergency Motion for Stay Pending Appeal (Case No. 8:15-cv-103-T-30, Doc. No. 4):

> THE COURT: And if I don't stay it, then the creditors six months from now are going to claim, well, you know, we've continued to do business and now we're harmed by your ruling on this appeal.
>
> MS. GREEN: Well, I think that if the Court rules that the second appeal is not equitably moot that you stop that argument. They've joined in here, so I don't think that it would be appropriate for them to make that argument six months from now.
>
> THE COURT: Well, they're smart folks and they kind of knew what they were getting into at the time the plan was confirmed, right?
>
> MS. GREEN: I guess.
>
> MR. TERZO: I think so.
>
> THE COURT: They kind of knew this appeal was pending at the time.

February Hearing Tr. 37:7-22.

Shortly after the hearing concluded, the Court consolidated the First and Second Appeals into a single appeal.[7]  Doc. No. 31.  In the same Order, the Court made two important determinations:  1) "the Court's consolidation of the appeals renders [Bayou Shores'] motion to dismiss moot"; and 2) "Equitable mootness is not an issue in this case; creditors are aware of the issues involved in this appeal.  At bottom, this case is about jurisdiction of the Bankruptcy Court." *Id.* at ¶¶ 2-3.

---

[7] The Court consolidated the United States' Second Appeal on February 3, 2015.  Doc. No. 31. The Court consolidated ACHA's Second Appeal on February 5, 2015.  Doc. No. 38.

6

**ARGUMENT**

As a preliminary matter, the United States hereby incorporates its Response in Opposition to Appellee's Motion to Dismiss (Doc. No. 29) to Bayou Shores' First Motion to Dismiss.

**I. THE COURT DISMISSED BAYOU SHORES' FIRST MOTION TO DISMISS BECAUSE IT WAS MOOT NOT UNRIPE**

In its Motion, Bayou Shores argues that the Court must rule on the merits of its First Motion to Dismiss because 1) that motion is now ripe and 2) failure to do so would "greatly prejudice Bayou Shores if consolidation results in the merits of Bayou Shores' First Motion to Dismiss not being evaluated on the merits." Doc. No. 61 at ¶¶ 7-8. Bayou Shores is mistaken on both points.

First, Bayou Shores argues "[n]ow that consolidation of all appeals is complete, the First Motion to Dismiss is ripe for a decision on the merits." Doc No. 61 at ¶ 8. Bayou Shores suggests that its First Motion to Dismiss was denied as moot only "[b]ecause the First and Second Appeals were in the process of being consolidated. . . ." Doc. No. 61 at ¶ 8. Now that the First and Second Appeals are consolidated, Bayou Shores suggests, "the First Motion to Dismiss is ripe for a decision on the merits.' *Id.* In fact, the Court consolidated the First and Second Appeals largely *because of* Bayou Shores' First Motion to Dismiss. Both of the United States' First and Second Appeals turn on whether the Bankruptcy Court had jurisdiction to exercise control over—and, if so, to what extent—Bayou Shores' terminated Medicare provider agreement. As the Court noted in its February 3, 2015 Order, "At bottom, this case is about jurisdiction of

7

the Bankruptcy Court." Doc. No. 31 at ¶ 3. The arguments in the First Appeal demonstrated that the Bankrupty Court lacked subjected matter jurisdiction over the terminated provider agreement. The Bankruptcy's Court's subsequent acts do not confer jurisdiction nor do they render the United States jurisdictional challenge moot.[8] As the Supreme Court long ago held, "[w]ithout jurisdiction the court cannot proceed at all in any cause." University of South Alabama v. American Tobacco Co., 168 F. 3d 405, 409-10 (11th Cir. 1999) (quoting Ex parte McCardle, 74 U.S. (7 Wall.) 506 (1868)).

Bayou Shores argues in its First Motion to Dismiss that three of the four issues raised in the United States' First Appeal are constitutionally moot are, in fact, moot themselves because the Court consolidated the United States' First and Second Appeals due to similar issues of law being involved in both appeals. Additionally, the Court flat out rejected Bayou Shores' argument that any part of the United States' appeal was equitably moot. Doc. 31 at ¶ 3 ("Equitable mootness is not an issue in this case; creditors are aware of the issues involved

---

[8] Even if issues raised in the United States' First Appeal are moot, this Court should still rule on them because the "challenged action [is] capable of repetition, yet evading review"—a well-known exception to the mootness doctrine. *See Wakefield v. Church of Scientology of California*, 938 F.2d 1226, 1229 (11th Cir. 1991). In this case, bankruptcy practitioners have trumpeted the Bankruptcy Court's rulings underlying the First and Second Appeal as a means to "stave off" or "skirt" Medicare termination. *See* Randall R. Fearnow et. al., "Nursing Facility Takes a Creative Path to Skirt Medicare Termination," Chicago Daily Law Bulletin, Feb. 19, 2015, *available at* http://www.quarles.com/content/uploads/2015/02/17629-LB-reprint-Quarles-Feb19-2015.pdf; Art Gambill et al., "Florida Bankruptcy Court Offers Potential Means to Stave Off Medicare Termination," Feb. 17, 2015, *available at* http://www.mcguirewoods.com/Client-Resources/Alerts/2015/2/Florida-Bankruptcy-Court-Medicare-Termination.aspx. Healthcare providers with terminated provider agreements could fast-track their bankruptcies—as Bayou Shores did—to foreclose the United States' right to appeal adverse decisions related to a terminated provider agreement. Thus, the Court should rule on all issues raised in the United States' First because they are "capable of repetition, yet evading review."

in this appeal."). Now, Bayou Shores wants to re-litigate the issue of equitable mootness by attempting to renew an argument that this Court already considered and rejected.

Second, Bayou Shores conclusory states that it will be "greatly prejudiced" if the Court does not address the merits of its First Motion to Dismiss.  Yet, at the February 3, 2015 hearing, Bayou Shores' counsel conceded that "the [United States'] second appeal will basically subsume all of those issues [of the United States' First Appeal]." February Hearing Tr. 36:4-5.  It is hard to imagine what prejudice Bayou Shores would face if the Court ruled on the merits of the United States' First Appeal when, as Bayou Shores concedes, the same issues arise again in the United States' Second Appeal.  Bayou Shores has not filed a motion to dismiss the United States' Second Appeal so this Court will rule on the same issues that this Motion attempts to dismiss.  Bayou Shores cannot escape that, "[a]t bottom, this case is about the jurisdiction of the Bankruptcy Court." Doc. No. 31 at ¶ 3.

Finally, Bayou Shores now raises concerns about the consolidation—*over there months after* this Court consolidated the pending appeals.  Bayou Shores cites several cases for the proposition that consolidation is improper if the rights of the parties would be prejudiced.  These cases are distinguishable because *none* involve the consolidation of appeals involving similar issues of law.  For example, in *Mills v. Beech Aircraft Corp.*, the Fifth Circuit affirmed the district court's ruling that the plaintiffs could not consolidate their products liability action

because the cases were at different stages of litigation.  886 F.2d 758, 762.(5th Cir. 1989).   Likewise, in *St. Bernard General Hosp., Inc. v. Hospital Serv. Ass'n of New Orleans, Inc.*, the Fifth Circuit held that it was not an abuse of discretion for the district court to deny a motion to consolidate because, among other things, the cases were at "different stages of preparedness for trial."  712. F.2d 978, 990 (5th Cir. 1983).  Here, the United States First and Second Appeals are not at different stages as the First Appeal is fully briefed and the Second Appeal will be fully briefed on May 20, 2015.

In another case cited by Bayou Shores, *Miller v. U.S. Postal Serv.*, the Fifth Circuit said "[t]he proper solution to the problems created by the existence of two more cases involving the same parties and issues, simultaneously pending in the same court would be to consolidate them under Rule 42." 729 F.2d 1033, 1036 (5th Cir. 1984) (citing *Thomas v. Deason*, 317 F. Supp. 1098, 1099 (W.D. Ky. 1970)). That is exactly what happened here when the Court consolidated the First and Second Appeals because they involve the same parties and issues of law.  The only prejudice that consolidation of the First and Second Appeals poses Bayou Shores is that now all outstanding issues between the parties will be resolved in one, potentially unfavorable opinion instead of in a piecemeal fashion.

Finally, Bayou Shores does not explain why it waited over three months to file the Motion to renew its First Motion to Dismiss.  It is inexplicable that, if Bayou Shores truly believed that the First Motion to Dismiss is now ripe for

adjudication, it did not file this Motion on or shortly after February 5, 2015, when the Court completed consolidation of the First and Second Appeals into the instant case.  Doc. No. 38.  Instead, Bayou Shores' delay reveals that the Motion is nothing more than a ploy to prevent the Court from issuing a final order on the First and Second Appeals.

## II.     BAYOU SHORES' MOTION IS UNTIMELY

In addition to the reasons stated above, the Court should deny the Motion because Bayou Shores filed it over *three weeks* beyond the deadline by which it had to file a motion to dismiss.  On February 13, 2015, Bayou Shores filed an Expedited and Agreed Motion to Establish Briefing Schedule in Consolidated Appeals (Doc. No. 43), which the Court granted on February 17, 2015 (the "Briefing Schedule Order").  Doc. No. 44.  In the Briefing Schedule Order, the Court ordered that the "[f]iling of any Motion(s) to Dismiss by the Appellee" would be filed "[w]ithin 14 days after service of Appellant USA's initial brief."  Doc. No. 33 at pg. 2.   The United States filed its Appellant's Brief on April 1, 2015, which means that Bayou Shores had until April 15, 2015 to file a motion to dismiss.  Bayou Shores' Motion was not filed until May 7, 2015, *over three weeks* beyond the applicable deadline.

Moreover, the Briefing Schedule Order states, "in the event Appellee files two separate Motions to Dismiss, *absent any agreement otherwise*, such are intended to be filed on the same day to preserve the time lime contemplated herein."  Doc. No. 31 at n.3 (emphasis added).  On February 27, 2015, Bayou

11

Shores filed a motion to dismiss ACHA's appeal of the Bankruptcy Court's Order confirming Bayou Shores' plan of reorganization.[9]  Doc. No. 54.  As Bayou Shores' instant Motion was filed on May 7, 2015, Bayou Shores clearly filed separate motions to dismiss on different days in clear violation of the Briefing Schedule Order.  Counsel for the United States has not agreed to any change in the timeline contemplated by the Briefing Schedule Order related to Bayou Shores' ability to file motions to dismiss.  Moreover, the Briefing Schedule Order clearly governs the timeline for Bayou Shores to have filed its Motion as it encompasses the filing of *"any* Motion(s) to dismiss" by Bayou Shores without any qualifiers.  Doc. No. 31 (emphasis added).

In its Motion, Bayou Shores does not explain why it did not comply with the deadlines set forth in the Briefing Schedule Order.  Bayou Shores does not establish that good cause exists for its delay in filing the Motion and, therefore, the Court should not entertain this Motion.  "The Eleventh Circuit has consistently held that motions filed after a deadline imposed by a court should be denied as untimely." Idearc Media Corp. v. Kimsey & Associates, P.A., No. 8:07-CV-1024-T-17EAJ, 2009 WL 413531, *4 (M.D. Fla. February 18, 2009) (citing Payne v. Ryder System, Inc. Long Term Disability Plan, 173 F.R.D. 537, 540 (M.D. Fla. 1997).  Once the court enters the scheduling order, it may be modified only "upon a showing of good cause." Fed. R. Civ. P. 16(b). The Eleventh Circuit has instructed that "[t]his good cause standard precludes modification unless the

---

[9] Bayou Shores' motion to dismiss ACHA's Second Appeal also appears untimely per the Briefing Schedule Order.

schedule cannot 'be met despite the diligence of the party seeking the extension.'" *Sosa v. Airprint Systems, Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998) (citing Fed. R. Civ. P. 16 advisory committee's note); *see also Lord v. Fairway Elec. Corp.*, 223 F. Supp. 2d 1270, 1278 (M.D. Fla. 2002) ("Absent a showing of diligence on the part of a party seeking to extend deadlines contained in the scheduling order, the court-ordered schedule should not be disturbed."). Accordingly, the Court should deny Bayou Shores' Motion as untimely.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court enter an Order denying Bayou Shores' Motion and rule on the merits of the United States' First and Second Appeals.

Dated this 18th day of May, 2015.

**A. LEE BENTLEY, III**
UNITED STATES ATTORNEY

**SEAN P. FLYNN**
Deputy Chief, Civil Division
Assistant United States Attorney
USAO No. 111
400 North Tampa Street, Suite 3200
Tampa, Florida 33602
Telephone: (813) 274-6000
Facsimile: (813) 274-6200
Sean.flynn2@usdoj.gov

*/s/ Christopher J. Emden*
**CHRISTOPHER J. EMDEN**
Assistant United States Attorney
USAO No. 158
400 North Tampa Street, Suite 3200
Tampa, FL 33602

              Telephone: (813) 274-6000
              Facsimile: (813) 274-6200
              Christopher.Emden@usdoj.gov

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on May 18, 2015, a copy of the foregoing was filed with the Court using the Court's CM/ECF filing system, which will send an electronic notice of filing to all parties.

              /s/ *Christopher J. Emden*
              CHRISTOPHER J. EMDEN
              Assistant United States Attorney