UNITED STATED DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

No. 8:14-cv-02816-JSM

In re:

BAYOU SHORES SNF LLC,

     Debtor.

----------------------------------------------------------------

|                                                        |     |
|--------------------------------------------------------|-----|
|                                                        | )   |
| THE UNITED STATES OF AMERICA,                          | )   |
| on behalf of the Secretary of the United States        | )   |
| Department of Health and Human Services,               | )   |
|                                                        | )   |
|     Appellant                      | )   |
|                                                        | )   |
| v.                                                     | )   |
|                                                        | )   |
| BAYOU SHORES SNF LLC,                                  | )   |
|                                                        | )   |
|     Appellee.                      | )   |

_____)

## REPLY BRIEF OF THE APPELLANT

**A. LEE BENTLEY, III**
UNITED STATES ATTORNEY

**SEAN P. FLYNN**
Deputy Chief, Civil Division
Assistant United States Attorney
USAO No. 111
400 North Tampa Street, Suite 3200
Tampa, Florida 33602
Telephone:  (813) 274-6000
Facsimile:  (813) 274-6200
**CHRISTOPHER J. EMDEN**
Assistant United States Attorney
USAO No. 158
400 North Tampa Street, Suite 3200
Tampa, Florida 33602
Telephone:  (813) 274-6000
Facsimile:  (813) 274-6200

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ iii

ARGUMENT .................................................................................................................... 1

   I.  TERMINATION ENTAILS NO LEGAL RIGHT TO CURE ........................................ 1

   II.  ADMINISTRATIVE LAW JUDGE UPHELD THE TERMINATION ...................... 3

   III.  THE MCORP CASE IS CONTROLLING ...................................................... 4

   IV.  NO RIGHT TO A PRE-TERMINATION HEARING ................................. 5

   V.  BANKRUPTCY TO THWART REGULATORY ACTION ........................................ 8

CONCLUSION ................................................................................................................. 9

CERTIFICATE OF SERVICE ......................................................................................... 11

## TABLE OF AUTHORITIES

**FEDERAL CASES**

Americana Healthcare Corp. v. Schweiker,
 688 F.2d 1072 (7th Cir. 1982) ................................................................. 6
Barnette v. Evans,
 673 F.2d 1250 (11th Cir. 1982) ............................................................... 10
Bayou Shores SNF, LLC v. Burwell,
 No. 8:14-cv-1849-T-33MAP, 2014 WL 4101761 (M.D. Fla. Aug. 20, 2014) .......................... 7
Bd. of Gov'rs of the Fed. Reserve Sys. v. MCorp Fin.,
 Servs., 502 U.S. 32 (1991) ........................................................... 4, 5, 9
Blossom South, LLC v. Sebelius,
 987 F.Supp.2d 289 (W.D.N.Y. 2013) .......................................................... 6
Bonner v. City of Prichard,
 661 F.2d 1206 (11th Cir. 1981) ............................................................. 7
Brock v. Rusco Indus., Inc.,
 842 F.2d 270 (11th Cir. 1988) ............................................................. 10
Butner v. United States,
 440 U.S. 48 (1979) ................................................................. 7, 8, 9
Cathedral Rock of N. Coll. Hill, Inc. v. Shalala,
 223 F.3d 354 (6th Cir. 2000) ............................................................... 6
CompRehab Wellness Grp., Inc. v. Sebelius,
 No. 11-23377-CIV, 2013 WL 1827675  (S.D. Fla. Apr. 30, 2013) ............................... 4
Erickson v. Comm'r of Soc. Sec.,
 431 Fed.Appx. 809 (11th Cir. 2011) ........................................................ 9
Geriatrics, Inc. v. Harris,
 640 F.2d 262 (10th Cir. 1981) .............................................................. 6
GOS Operator, LLC v. Sebelius,
 843 F.Supp.2d 1218 (S.D. Ala. 2012) ....................................................... 6
Gray Panthers Advocacy Comm. v. Sullivan,
 936 F.2d 1284 (D.C. Cir. 1991) ............................................................. 5
Gulfcoast Med. Supply, Inc. v. Sec'y, Dep't of Health and Human Servs.,
 468 F.3d 1347 (11th Cir. 2006) ............................................................. 9
Heckler v. Ringer,
 466 U.S. 602 (1984) ........................................................................ 7
Ieradi v. Mylan Laboratories, Inc.,
 230 F.3d 594 (3d Cir. 2000) ............................................................... 4
In re Chicago, Milwaukee, St. Paul and Pac. R.R. Co.,
 791 F.2d 524 (7th Cir. 1986) .............................................................. 7
In re Delaney,
 534 F.2d 645 (5th Cir. 1976) ........................................................... 7, 10
In re Fed.-Global Mogul, Inc.,
 684 F.3d 355 (3rd Cir. 2012) .............................................................. 10
In re Glenn,
 760 F.2d 1428 (6th Cir. 1985) .............................................................. 7

iii

In re Lee,
  530 F.3d 458 (6th Cir. 2008) ...................................................................... 7
In re Ludlow Hosp. Soc., Inc.,
  124 F.3d 22 (1st Cir. 1997) ........................................................................ 7
In re Southmark Corp.,
  49 F.3d 1111 (5th Cir. 1995) ...................................................................... 7
In re Toledo,
  170 F.3d 1340  (11th Cir. 1999) ................................................................. 8
Johnson v. First Nat'l Bank of Montevideo, Minn.,
  719 F.2d 270 (8th Cir. 1983) ...................................................................... 7
Kern Enters., Inc. v. Aggrey,
  450 F.Supp. 137 (N.D. Ohio 1978) ............................................................ 6
Leon Healthcare, Inc. v. Agency for Health Care Admin.,
  No. 97-1618-CIV, 1997 WL 419641  (S.D. Fla. July 8, 1997) ................... 6
Lifestar Ambulance Serv., Inc. v. United States,
  365 F.3d 1293 (11th Cir. 2004) .................................................................. 6
Mathews v. Eldridge,
  424 U.S. 319 (1976) ................................................................................... 5
Mem'l Hosp. v. Heckler,
  706 F.2d 1130 (11th Cir. 1983) .................................................................. 7
Moody v. Amoco Oil Co.,
  734 F.2d 1200 (7th Cir. 1984) .................................................................. 10
Morton Plant Hosp. Ass'n, Inc. v. Sebelius,
  747 F.Supp.2d 1349 (M.D. Fla. 2010) ....................................................... 9
Northwest Healthcare, L.P. v. Sullivan,
  793 F.Supp. 724 (N.D. Tex. 1992) ............................................................. 6
O'Bannon v. Town Court Nursing Ctr.,
  447 U.S. 773 (1980) ................................................................................... 5
Pharmacy Corp. v. Perales,
  930 F.2d 163 (2nd Cir. 1991) ..................................................................... 6
Shahar v. Bowers,
  120 F.3d 211 (11th Cir. 1997) .................................................................... 4
Shalala v. Illinois Council on Long Term Care, Inc.,
  529 U.S. 1 (2000) ....................................................................................... 4
Sheepshead Nursing Home v. Bowen,,
  595 F.Supp. 992 (S.D.N.Y. 1984) ............................................................. 6
Somerset Place, LLC v. Sebelius,
  684 F.Supp.2d 1037 (N.D. Ill. 2010) ......................................................... 6
Taransky v. Sec'y of Health and Human Servs.,
  760 F.3d 307 (3rd Cir. 2014) ..................................................................... 4
Thomas Jefferson Univ. v. Shalala,
  512 U.S. 504 (1994) ................................................................................... 9
Trade Around the World of PA v. Shalala,
  145 F.Supp.2d 653 (W.D. Pa. 2001) .......................................................... 6

<u>TranSouth Fin. Corp. of Fla. v. Johnson</u>,
  931 F.2d 1505 (11th Cir. 1991) ........................................................ 8
<u>United States v. Hansen</u>,
  262 F.3d 1217 (11th Cir. 2001) ...................................................... 10
<u>United States v. Vernon Home Health Care Agency, Inc.</u>,
  21 F.3d 693 (5th Cir. 1994) ............................................................ 7
<u>V.N.A. of Greater Tift Cnty., Inc. v. Heckler</u>,
  711 F.2d 1020 (11th Cir. 1983) ...................................................... 7
<u>White v. City of Birmingham</u>,
  --- F.Supp.3d ----, 2015 WL 1418891 (N.D.Ala. March 27, 2015) ........................................... 4

## **<u>FEDERAL STATUTES</u>**

28 U.S.C. § 1334 ............................................................................ 4, 9
42 U.S.C. § 1395cc .......................................................................... 7
42 U.S.C. §§ 1395i-3(f)(1) .......................................................... 5, 10

## **<u>FEDERAL REGULATIONS</u>**

42 C.F.R. § 488.454 ........................................................................ 2
42 C.F.R. § 488.456 ........................................................................ 2

## **<u>OTHER AUTHORITIES</u>**

<u>Rosewood Living Ctr. v. CMS</u>, 2006 WL 1031215 ...................................... 2
H.R. Report 100-391(I), 100th Cong., 1st Sess. 1987 ................................ 3

**ARGUMENT**

The United States of America, on behalf of the Secretary of the United States Department of Health and Human Services ("Secretary of HHS"), replies to the appellee brief submitted by Bayou Shores [Doc. 60] in the instant appeal.   Much of Bayou Shores' brief deals with allegations of mootness, which this Court has dealt with elsewhere [Doc. 31 & 65], and with complaints that the United States is "recycling" its arguments in these consolidated appeals.   If the United States has been consistent in its fundamental arguments about jurisdiction, about the impropriety of the Bankruptcy Court's intrusion into the Secretary's regulatory authority over federal health and safety requirements, *etc.*, it is only because the Bankruptcy Court's errors carried forward, and became even more pronounced, from the time of the initial Injunctive Order to the Confirmation Order.

## I.   TERMINATION ENTAILS NO LEGAL RIGHT TO CURE

Over the brief course of Bayou Shores' fast-tracked bankruptcy case, the Bankruptcy Court's improper interference with the Secretary's termination of Bayou Shores' Medicare provider agreement evolved.   When the Bankruptcy Court entered its Injunctive Order [Doc. 45-46], the Bankruptcy Court claimed to be giving Bayou Shores "very limited" relief:

> Now, [Bayou Shores] is not asking here for me, in the context of a motion to assume, to displace the administrative process.  [Bayou Shores] is . . . recognizing that in order to do that it must go through the administrative process that is currently underway to satisfy the relevant state and federal agencies . . . that it should be able to continue.

[Doc. 45-53 at p.115].  Later, when Bayou Shores did ask the Bankruptcy Court for authority to assume its terminated Medicare provider agreement, the Bankruptcy Court arrogated to itself the authority to decide that Bayou Shores' nursing home was compliant with federal health and safety requirements and so should be able to go forward as a Medicare provider [Doc. 45-36 at

p.15].  Paying no heed to the actual terms of Medicare law (pursuant to which a later return to compliance is not a legal basis to avoid a termination), and moving away from its own earlier statements about granting only "very limited" relief, the Bankruptcy Court invested itself with new authority as it went along in order to let Bayou Shores exit from bankruptcy with its terminated Medicare provider agreement still in effect.

Termination of a provider agreement is governed by 42 C.F.R. § 488.456, which authorizes CMS to terminate whenever CMS determines that a provider in not in compliance with federal health and safety requirements.  Importantly, this authority is not negated, limited, or impaired in any degree by a provider's assertion that it subsequently returned to a state of compliance.  Bayou Shores could not prevent CMS from terminating the provider agreement by claiming to have returned to substantial compliance subsequent to the notice of termination.  See Rosewood Living Ctr. v. CMS, 2006 WL 1031215 (HHS Departmental Appeals Board, March 30, 2006) ("CMS did not give [the noncompliant nursing home] an opportunity to correct its deficiencies, and nothing in the statute or regulations required it to do so.") (citations omitted); [see Doc. 49 at pp.38-39, summarizing applicable law].  The Bankruptcy Court stated that it considered and rejected Bayou Shores' argument that its termination would cease if Bayou Shores returns to substantial compliance:

> The Debtor relies on 42 C.F.R. § 488.454, entitled "Duration of Remedies," in support of its argument. That regulation does provide that certain remedies HHS is entitled to invoke do expire when a revisit by CMS confirms that facility has been brought back into substantial compliance.  Expiration of certain remedies can even predate a revisit if the facility can supply HHS with acceptable documentation showing the facility was in substantial compliance at some point before the revisit survey. *But as HHS correctly points out, the regulation the Debtor relies on deals with "alternative remedies" other than termination.*

[Doc. 45-36 at pp. 13] (emphasis added) (internal citations omitted).  Despite this critical

2

acknowledgement, the Bankruptcy Court acted contrary to its own ruling.   Indeed, the Bankruptcy Court reinstituted the terminated provider agreement because it unilaterally determined that Bayou Shores was able to "cure the default and provide adequate assurance of future performance." [Id. at14-15.].   Whether the Bankruptcy Court chose to label its justification as a "returning to substantial compliance" or "curing the default" is immaterial.   The The Bankruptcy Court had no authority, and Bayou Shores no right, to overrule or evade the decision of the Secretary on the basis of Bayou Shores' alleged post-termination conduct.

## II.  ADMINISTRATIVE LAW JUDGE UPHELD THE TERMINATION

Bayou Shores attempts to justify the Bankruptcy Court's actions by stating that the Medicare administrative appeal it has "diligently pursued" was still going on when the Bankruptcy Court approved the assumption of the Medicare provider agreement as an allegedly executory contract.  [See Doc. 60 at p.21].  This is misleading.  The record in this case included a included a decision issued by an administrative law judge ("ALJ") of the HHS Departmental Appeals Board, in mid-December 2014 [Doc. 45-28], but the Bankruptcy Court took no account of the ALJ's decision.  [See Doc. 45-36].  The ALJ's decision indicated that the only contention contention Bayou Shores had raised in its appeal before her was that Bayou Shores felt it deserved another chance to show it could comply with the health and safety requirements.[1] Bayou Shores did not raise any challenge before the ALJ about notice[2] or any other procedural

---

[1]   It should be recalled that CMS terminated Bayou Shores' Medicare provider agreement after significant inspection findings of noncompliance with health and safety requirements had been made on three separate occasions, in February [Doc. 45-48], March [Doc. 45-49], and July 2014 [Doc. 45-50].  Congress itself has expressed strong disapproval of nursing homes that fall in and out of compliance with federal health and safety requirements .  In its most aggressive legislative efforts to strengthen the federal nursing home enforcement scheme , Congress labelled this behavior a "'yo/yo' or `rollercoaster' phenomenon" that should not be tolerated.  See H.R. Report 100-391(I), 100th Cong., 1st Sess. 1987, reprinted in USCAAN 2313-I at 290, 1987 WL 61524.

[2]   Even though Bayou Shores did not raise the alleged failure of public notice issue before the ALJ, Bayou Shores makes the baseless accusation in this appeal. [See Doc. 60 at p. 10.  Confirmation of the public notice is attached

aspect of its termination; Bayou Shores did not challenge any inspection finding; and indeed, Bayou Shores did not deny its failure to comply with Medicare health and safety requirements [Doc. 45-28 at pp.6, 8, 10].[3]

The ALJ determined that the nursing home "had a significant number of serious deficiencies" [Doc. 45-28 at p.6]. The ALJ then properly invoked the *applicable Medicare law:* when noncompliance has been found, a nursing home has no legal right to avoid termination by asserting that corrections were later made [Doc. 45-28 at pp.8-10]. The ALJ upheld the termination.

### III.  THE <u>MCORP</u> CASE IS CONTROLLING

Bayou Shores also argues half-heartedly that because the Bankruptcy Court did not enjoin Bayou Shores' administrative appeal, the United States is incorrect in citing <u>Bd. of Gov'rs of the Fed. Reserve Sys. v. MCorp Fin. Servs.</u>, 502 U.S. 32 (1991), the decision that contains the Supreme Court's most explicit recognition that the bankruptcy jurisdictional grant, 28 U.S.C. § 1334, does not create jurisdiction over the actions of administrative agencies.  [<u>See</u> Doc. 60 at pp.29-30].  In <u>MCorp</u>, a federal authority brought administrative actions against MCorp for financial regulatory violations, 502 U.S. at 34, 35, and MCorp wanted injunctive relief against those administrative actions.  In the instant matter, the Secretary brought an administrative action

---

hereto as Exhibit A.  The Court may take judicial notice of the fact that the notice was published.  <u>White v. City of Birmingham</u>, --- F.Supp.3d ----, 2015 WL 1418891, *3 (N.D.Ala. March 27, 2015) (Taking judicial notice of the "fact that the news articles were published[,]" but not the factual accuracy of the news articles.); <u>Shahar v. Bowers</u>, 120 F.3d 211, 214, n. 5 (11th Cir. 1997) ("We stress that we are not asked merely to take judicial notice of the fact that the media has reported 'X' or the fact that a press release says 'X.' We are asked to know 'X.'"); <u>see also</u> <u>Garber v. Legg Mason, Inc.</u>, 347 Fed.  Appx. 665, 669 (2d Cir. 2009); <u>Ieradi v. Mylan Laboratories, Inc.</u>, 230 F.3d 594, 598 n.2 (3d Cir. 2000).

[3]  The law of Medicare requires that "virtually all legal attacks" against a Medicare determination be channeled through the administrative appeal process.  <u>Shalala v. Illinois Council on Long Term Care, Inc.</u>, 529 U.S. 1, 13 (2000).  Any argument not raised at each step of the appeal has been waived.  <u>See</u>, <u>e.g.</u>, <u>Taransky v. Sec'y of Health and Human Servs.</u>, 760 F.3d 307, 320-21 (3rd Cir. 2014) (citing <u>Ill. Council</u>); <u>CompRehab Wellness Grp., Inc. v. Sebelius</u>, No. 11-23377-CIV, 2013 WL 1827675 *5 (S.D. Fla. Apr. 30, 2013).

action against Bayou Shores for violations of federal health and safety requirements.  See 42 U.S.C. §§ 1395i-3(f)(1), 1396r(f)(1) (emphasis added) (entrusting to the Secretary of HHS the duty to enforce federal health and safety requirements "for the protection, health, safety, welfare, and rights of residents" of nursing homes); Gray Panthers Advocacy Comm. v. Sullivan, 936 F.2d 1284, 1286 (D.C. Cir. 1991).  The Medicare termination was the Secretary's administrative enforcement action.  There is no meaningful distinction to be drawn from MCorp.  In neither MCorp nor the instant matter did a bankruptcy court have authority to enjoin, or even to question the "legitima[cy]" of, the regulator's administrative action: any such inquiry would "conflict with the broad discretion Congress has . . . granted . . . administrative entities and . . . [would be] inconsistent with the limited authority Congress has vested in bankruptcy courts."  See MCorp, 502 U.S. at 40.

## IV.  NO RIGHT TO A PRE-TERMINATION HEARING

Bayou Shores also uses its brief as an occasion to rail against the law that applies to Medicare terminations and administrative appeals:  Bayou Shores decries the unavailability of a hearing prior to a Medicare termination taking effect as an "affront to due process" that renders the administrative process "a meaningless illusory remedy."  [Doc. 60 at pp.20,21].  The applicable law, however, has been well-settled for decades.  The Supreme Court itself has recognized that the programs of the Social Security Act (which include Medicare and Medicaid) carry no rights to a pre-termination hearing.  See Mathews v. Eldridge, 424 U.S. 319 (1976) (Social Security beneficiary has no constitutional right to be heard prior to termination of his benefit payments); O'Bannon v. Town Court Nursing Ctr., 447 U.S. 773 (1980) (Medicaid recipient has no constitutional right to be heard prior to his nursing home's termination).  For decades, when healthcare providers have complained that they want a hearing before a

termination from Medicare and Medicaid takes effect, the courts have denied relief, recognizing that the requirements of due process are satisfied by the availability of a hearing after the termination has taken effect. E.g., Cathedral Rock of N. Coll. Hill, Inc. v. Shalala, 223 F.3d 354, 354, 366 (6th Cir. 2000); 701 Pharmacy Corp. v. Perales, 930 F.2d 163, 170 (2nd Cir. 1991); Americana Healthcare Corp. v. Schweiker, 688 F.2d 1072, 1082-83 (7th Cir. 1982); Geriatrics, Inc. v. Harris, 640 F.2d 262, 265 (10th Cir. 1981); Blossom South, LLC v. Sebelius, 987 F.Supp.2d 289, 298-99 (W.D.N.Y. 2013); GOS Operator, LLC v. Sebelius, 843 F.Supp.2d 1218, 1233-34 (S.D. Ala. 2012); Somerset Place, LLC v. Sebelius, 684 F.Supp.2d 1037, 1042 (N.D. Ill. 2010); Trade Around the World of PA v. Shalala, 145 F.Supp.2d 653, 665 (W.D. Pa. 2001); Northwest Healthcare, L.P. v. Sullivan, 793 F.Supp. 724, 727-28 (N.D. Tex. 1992); Sheepshead Nursing Home v. Bowen, 595 F.Supp. 992, 997-98 (S.D.N.Y. 1984); Kern Enters., Inc. v. Aggrey, 450 F.Supp. 137, 138 (N.D. Ohio 1978); Ponce de Leon Healthcare, Inc. v. Agency for Health Care Admin., No. 97-1618-CIV, 1997 WL 419641 *3 (S.D. Fla. July 8, 1997).

This is the applicable law that governs a provider agreement:  a nursing home's Medicare Medicare termination takes effect on the date specified by the Centers for Medicare & Medicaid Services in the termination notice.  Medicare payments end; and governmental authorities assist the nursing home patients in an orderly and safe relocation to facilities with suitable records of compliance with federal health requirements.  Subsequently, in an administrative appeal, the nursing home may seek a review of its termination, in a post-termination hearing.  This is the "comprehensive remedial scheme," see Lifestar Ambulance Serv., Inc. v. United States, 365 F.3d 1293, 1295 (11th Cir. 2004), that Congress has established for challenging Medicare determinations.  Injunctive relief is not available in the meantime as a way to accommodate one's particular circumstances or preferences.  See Heckler v. Ringer, 466 U.S. 602, 615 (1984);

V.N.A. of Greater Tift Cnty., Inc. v. Heckler, 711 F.2d 1020, 1034 (11th Cir. 1983); Bayou Shores SNF, LLC v. Burwell, No. 8:14-cv-1849-T-33MAP, 2014 WL 4101761 (M.D. Fla. Aug. 20, 2014); Beam Mgt., LLC v. CMS, Adv. Pro. 8:11-ap-00887-KRM (In re Beam Mgt., LLC dba Harmony Healthcare), M.D. Fla. Bankr. Case No. 8:10-bk-08580-KRM (order, Aug. 25, 2011).

A bankruptcy court has neither jurisdiction nor authority to alter this scenario by manufacturing new or different rights for a nursing home that does not like the terms of Medicare termination law or its associated remedial scheme.  The law of bankruptcy recognizes that property rights are defined by applicable nonbankruptcy law.  Butner v. United States, 440 U.S. 48, 54-55 (1979).  The law of bankruptcy also recognizes that a court has "no jurisdiction to to alter or modify" the terms of a contract.  In re Delaney, 534 F.2d 645, 647 (5th Cir. 1976).[4] Now, a Medicare provider agreement is a very specific type of agreement:  it is a creature of federal statute, 42 U.S.C. § 1395cc, and its governing terms derive entirely from the Medicare statute and regulations, Mem'l Hosp. v. Heckler, 706 F.2d 1130, 1136 (11th Cir. 1983), see United States v. Vernon Home Health Care Agency, Inc., 21 F.3d 693, 695 (5th Cir. 1994). Accordingly, any `property rights' associated with the provider agreement are defined solely by Medicare law.  A bankruptcy court has no authority to modify or enhance a provider's statutory and regulatory rights under the provider agreement.[5]   To suggest otherwise means that bankruptcy court becomes a haven to run to whenever one is up against federal law that one wants to escape.  The Supreme Court has advised, to the contrary, that the bankruptcy process is

---

[4] The Eleventh Circuit has adopted as binding precedent the decisions issued by the former Fifth Circuit prior to October 1, 1981.  See Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981).

[5] Even a bankruptcy court's equitable powers do not permit the creation of new rights that do not exist under applicable nonbankruptcy law.  See, e.g., In re Ludlow Hosp. Soc., Inc., 124 F.3d 22, 28 (1st Cir. 1997), In re Chicago, Milwaukee, St. Paul and Pac. R.R. Co., 791 F.2d 524, 528 (7th Cir. 1986), In re Glenn, 760 F.2d 1428, 1440-41 (6th Cir. 1985), Johnson v. First Nat'l Bank of Montevideo, Minn., 719 F.2d 270, 274 (8th Cir. 1983). Bankruptcy law does not empower the bankruptcy courts "to act as roving commissions to do equity."  In re Lee,

not to be used to encourage "forum shopping" or to create special advantages "merely by reason of the happenstance of bankruptcy." Butner, 440 U.S. at 54-55.

## V.   BANKRUPTCY TO THWART REGULATORY ACTION

Bayou Shores' bankruptcy was really only about avoiding the regulatory consequences for failing to provide adequate care to Medicare and Medicaid beneficiaries and subjecting them, *repeatedly*, to immediate jeopardy of serious bodily harm.  Once the Bankruptcy Court invested Bayou Shores with new rights that do not exist outside of bankruptcy  -- new rights that gave Bayou Shores continuing Medicare payments, months after the termination and during the administrative appeal; new rights that kept the governmental authorities from their duty to assist Bayou Shores' nursing home residents in relocating to other nursing homes – there was nothing much left for the Bankruptcy Court to do but usher Bayou Shores' exit from bankruptcy with those newly made rights intact.   Although the legitimate purpose of bankruptcy law is to "restructure[e] debtor-creditor relations," In re Toledo, 170 F.3d 1340 n.9 (11th Cir. 1999), in order to leave the debtor "unhampered by the pressure and discouragement" of its debts, TranSouth Fin. Corp. of Fla. v. Johnson, 931 F.2d 1505, 1508 (11th Cir. 1991) (citations omitted), Bayou Shores had no real need to negotiate or restructure its debtor-creditor relations. Bayou Shores wanted relief from applicable law of Medicare and from the administrative consequences of Bayou Shores' repeated failures to comply with federal health and safety requirements.   Having received that relief from the Bankruptcy Court, Bayou Shores shortly drafted a plan that provided for 100% payment of every creditor's claim [Doc. 45-12 at p.18] and then -- despite all parties' awareness of the nature and pendency of the United States' appeal of the Injunctive Order -- the Bankruptcy Court "fast-tracked" Bayou Shores' plan to confirmation

530 F.3d 458, 473 (6th Cir. 2008) (quoting In re Southmark Corp., 49 F.3d 1111, 1116 (5th Cir. 1995)).

[Doc. 45-36 at p.7].  At the same time, the Bankruptcy Court approved the "assumption" of the terminated provider agreement, ensuring that Bayou Shores could go forward from bankruptcy with the Bankruptcy Court's newly-created rights in hand.

## CONCLUSION

In the end, this is a very simple case.  In the interest of giving Bayou Shores an outcome that the Bankruptcy Court thought equitable to Bayou Shores (*i.e.*, future business prospects, at least for a while), the Bankruptcy Court contravened a host of fundamental principles on jurisdiction and authority:

The Bankruptcy Court improperly interposed itself in the Medicare termination, in violation of the Social Security Act's comprehensive remedial scheme, pursuant to which "the exclusive jurisdictional basis for cases arising under the Social Security Act," Erickson v. Comm'r of Soc. Sec., 431 Fed.Appx. 809, 811 (11th Cir. 2011), provides solely for the limited judicial review of a final agency decision,[6] and under which injunctive relief is prohibited, Ringer, 466 U.S. at 615.[7] The Bankruptcy Court violated the Supreme Court's plain recognition that bankruptcy jurisdiction, 28 U.S.C. § 1334, does not confer jurisdiction upon a bankruptcy court to interpose itself in matters committed to administrative agencies.  See MCorp., 502 U.S. 32. The Bankruptcy Court violated the broad principles that "[b]ankruptcy does not insulate a debtor from . . . regulatory statutes," United States v. Hansen, 262 F.3d 1217, 1238 (11th Cir.

---

[6] This judicial review is limited to whether the administrative record contains substantial evidence in support of the Secretary's findings and whether the Secretary invoked the applicable legal standards.  Gulfcoast Med. Supply, Inc. v. Sec'y, Dep't of Health and Human Servs., 468 F.3d 1347, 1350 n.3 (11th Cir. 2006) (citations omitted).  The reviewing court accords substantial deference to the Secretary's interpretation of her own regulations.  Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512 (1994); Morton Plant Hosp. Ass'n, Inc. v. Sebelius, 747 F.Supp.2d 1349, 1357 (M.D. Fla. 2010).

[7] See [Doc. 49 at pp.32-35] for a summary of the courts' overwhelming rejection of the argument that Medicare jurisdictional law prohibits only the exercise of federal question jurisdiction or jurisdiction against the United States, but allows jurisdiction under bankruptcy, diversity, admiralty, or any of the other jurisdictional grants.

2001), and that a government regulator must be able to enforce its laws uniformly without regard to an entity's position in bankruptcy, <u>Brock v. Rusco Indus., Inc.</u>, 842 F.2d 270, 273 (11th Cir. 1988) (citation omitted).  Bankruptcy is not intended to encourage forum- shopping, <u>Butner</u>, 440 U.S. at 54-55, nor to serve as a special haven for those who have run afoul of the regulatory laws to which their business is subject, <u>In re Fed.-Global Mogul, Inc.</u>, 684 F.3d 355, 382 (3rd Cir. 2012).  The Bankruptcy Court made the "basic error" of "misjudg[ing] the width of [its] turf," <u>see</u> <u>Barnette v. Evans</u>, 673 F.2d 1250, 1251 (11th Cir. 1982), when it interposed itself at all in the termination of Bayou Shores' Medicare provider agreement for noncompliance with the federal health and safety requirements for nursing homes -- the enforcement of which Congress has committed to the Secretary, 42 U.S.C. §§ 1395i-3(f)(1), 1396r(f)(1).  The Bankruptcy Court violated the principle that an agreement that has been terminated prior to a bankruptcy never even arguably comes into a bankruptcy estate, so "there is nothing left for [a] debtor to assume," <u>Moody v. Amoco Oil Co.</u>, 734 F.2d 1200, 1212 (7th Cir. 1984).  The Bankruptcy Court violated the basic principles of bankruptcy jurisprudence that property rights are defined by applicable nonbankruptcy law, <u>Butner</u>, 440 U.S. at 54-55, and that a bankruptcy court has no authority to expand or modify contractual rights, <u>Delaney</u>, 534 F.2d at 647.  The Bankruptcy Court had no authority to create new rights under a Medicare provider agreement.

Any of these legal missteps by the Bankruptcy Court constitutes grounds for reversal. Taking them together, the United States very respectfully submits that the Bankruptcy Court actions were in error and without jurisdiction.  The Bankruptcy Court's orders on appeal should be reversed and vacated.

Respectfully submitted,

A. LEE BENTLEY, III
UNITED STATES ATTORNEY

s/ Sean P. Flynn
SEAN P. FLYNN
Deputy Chief, Civil Division
Assistant United States Attorney
USAO No. 111
400 North Tampa Street, Suite 3200
Tampa, Florida 33602
Telephone:  (813) 274-6000
Facsimile:  (813) 274-6200
Sean.Flynn2@usdoj.gov

CHRISTOPHER J. EMDEN
Assistant United States Attorney
USAO No. 158
400 North Tampa Street, Suite 3200
Tampa, Florida 33602
Telephone:  (813) 274-6000
Facsimile:  (813) 274-6200

## CERTIFICATE OF SERVICE

I hereby certify that on May 20, 2015, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to counsel of record.

s/ Sean P. Flynn
SEAN P. FLYNN
Assistant United States Attorney

11