**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

In re:

BAYOU SHORES SNF, LLC,

    Debtor.
_____/

FLORIDA AGENCY FOR HEALTH
CARE ADMINISTRATION,

    Appellant,

v.                                                                  Case No.: 8:14-cv-02816-JSM

BAYOU SHORES SNF, LLC,

    Appellee.
_____/

**APPELLANT'S REPLY BRIEF**

/s/ Leslei G. Street
LESLEI G. STREET, ESQUIRE
Chief Litigation Counsel
Florida Bar I.D. No. 0962023
Leslei.Street@ahca.myflorida.com
/s/ Andrew T. Sheeran
ANDREW T. SHEERAN, ESQUIRE
Assistant General Counsel
Florida Bar I.D. No. 0030599
Andrew.Sheeran@ahca.myflorida.com
Agency for Health Care
 Administration
2727 Mahan Drive, Mail Stop #3
Tallahassee, Florida 32308
Telephone: (850) 412-3630
Facsimile: (850) 922-6484

**TABLE OF CONTENTS**

**ARGUMENT** ……………………………………………..………………………….…..….1

    I.       AHCA's appeal should be allowed to proceed ........................................................1

    II.      The Confirmation Order violated the jurisdictional bar created by 42 U.S.C. § 405..................................................................................................................................2

    III.     The uncodified provision of law clarifying the scope of 42 U.S.C. § 405(h) must control ....................................................................................................................6

    IV.     If the Medicare Provider Agreement was terminated but the Medicaid Provider Agreement was not, the assumption of the Medicaid Provider Agreement was still improper ..................................................................................................................7

**CONCLUSION** ………………………………………………….…………………….…...8

**CERTIFICATE OF SERVICE** ………………………..………………………….….…9

**ARGUMENT**

I.   **AHCA's appeal should be allowed to proceed.**

Bayou Shores has filed two motions to dismiss AHCA's appeals throughout the course of this litigation.  In the first, Bayou Shores argued that the issues raised in AHCA's first appeal are either constitutionally or equitably moot.  [Doc. 20 and Doc. 61].  In its second motion to dismiss, Bayou Shores argued that, with regard to AHCA's second appeal, AHCA had failed to preserve its issues for appeal and that AHCA's appeal was equitably moot.  [Doc. 54]  After a hearing on May 19, 2015, this Court denied both of Bayou Shores' motions to dismiss.  [Doc. 65].  In spite of this, Bayou Shores peppers throughout its brief the same arguments that AHCA's appeal is moot [*see* Doc. 69, at 1, 8], that AHCA's appeal is equitably moot [Doc. 69 at 2-3, 8], and that AHCA has failed to properly preserve its issues for appeal [Doc. 69 at 10, 20-21].  The Court has definitively ruled on these issues and Bayou Shores' attempts at a second bite at the apple should be ignored.[1]

In addition to its previously-made arguments, Bayou Shores argues that AHCA's appeal of the Confirmation Order should be dismissed because AHCA's articulation of Issue I "does not lend itself to clean and logical analysis and forces Bayou Shores to guess . . . exactly what AHCA means by subject matter jurisdiction 'over' the Provider Agreements." [Doc. 69 at 12]. The issue could not be more straightforward: the Bankruptcy Court lacked jurisdiction to order the assumption of Bayou Shores' Medicare and Medicaid Provider Agreements.  Even if the termination of the Provider Agreements was not complete at the time of the bankruptcy filing, the Secretary of the Department of Health and Human Services ("HHS" or the "Secretary") had

---

[1] In the alternative, AHCA refers the Court to its arguments in its Response in Opposition to Appellee's Motion to Dismiss [Doc. 59] as well as the arguments of the United States in opposition to Bayou Shores' motions to dismiss [Doc. 29 and Doc. 63] and adopts these as if fully incorporated herein.

1

still determined that the Provider Agreements would be terminated. Any action by the Bankruptcy Court to prevent or delay the effect of the Secretary's determination – including a Confirmation Order ordering the assumption of the Provider Agreements – constitutes a breach of the jurisdictional bar created by 42 U.S.C. § 405(h) and is thus in excess of the Bankruptcy Court's subject matter jurisdiction. Even if the actual statement of the issue was unartfully articulated, the argument was clearly set forth in AHCA's brief. Read fairly, AHCA's arguments do not warrant Bayou Shores' purported confusion, much less dismissal of the appeal.

**II.     The Confirmation Order violated the jurisdictional bar created by 42 U.S.C. § 405.**

The Medicare Act prohibits the review of any decision of the Secretary outside of the process set forth in 42 U.S.C. § 405. *See* 42 U.S.C. § 1395cc(h)(1)(A). Bayou Shores argues that this prohibition is irrelevant because the Bankruptcy Court was not exercising jurisdiction over any Medicare determination. [*See, e.g.,* Doc. 69 at 14]. This is simply wrong. The determination at issue was not merely that Bayou Shores had been found to be out of compliance with the regulations of Medicare and Medicaid. It was, rather, that given Bayou Shores' actions causing immediate jeopardy to its residents' health and safety, Bayou Shores' Medicare and Medicaid Provider Agreements would be terminated. The Provider Agreements themselves are the *res* of the Medicare determination at issue. Thus, each and every action of the Bankruptcy Court asserting jurisdiction over the Medicare and Medicaid Provider Agreements – including the issuance of the Confirmation Order mandating their assumption – are beyond the subject matter jurisdiction of the Bankruptcy Court.

AHCA's position is supported by *In re St. Johns Home Health Agency, Inc.*, 173 B.R. 238, 244 (Bankr. S.D. Fla. 1994), and *In re Hospital Staffing Services, Inc.*, 258 B.R. 53 (S.D. Fla. 2000), and Bayou Shores' attempts to distinguish these cases fall flat. In both cases, the

courts held that the claims at issue were barred as a result of 42 U.S.C. § 405(h). In *St. Johns*, the debtor was the subject of an audit conducted under the auspices of the Health Care Financing Administration ("HCFA," the predecessor of the Centers for Medicare and Medicaid Services within HHS), the purpose of which was in part to determine the amount of any overpayments. *St. Johns*, 173 B.R. at 241. The debtor moved for the bankruptcy court to assume its Medicare provider agreement and concomitantly to determine (on a "'provisional' basis") the amount of any defaults for the purposes of 11 U.S.C. § 365(b). *Id*. The Bankruptcy Court for the Southern District of Florida held that it was without jurisdiction to consider claims related to Medicare reimbursement prior to the exhaustion of administrative remedies. *Id*. at 248. Finding that the debtor's business was "inextricably tied" to its relationship with HCFA, the court explained that the filing of a bankruptcy petition "does not confer upon a Medicare provider a right to immediate judicial review of Medicare overpayment determinations when that right is expressly denied outside of bankruptcy, and is precluded under the Medicare Act itself." *Id.* at 245-246.

In *Hospital Staffing*, the District Court for the Southern District of Florida considered a similar issue. The debtor's trustee had sought from the bankruptcy court a declaration that the debtor could avoid the Medicare administrative process by bringing an action in bankruptcy court against the Secretary regarding Medicare reimbursement issues. *Hospital Staffing*, 258 B.R. at 55. The bankruptcy court determined that it lacked subject matter jurisdiction as a result of 42 U.S.C. § 405(h). *Id. at 55*. The District Court for the Southern District of Florida affirmed, holding that the bankruptcy court correctly determined that the exercise of jurisdiction "is inappropriate because [the debtor's] claims are inextricably intertwined with [HHS] reimbursement decisions." *Id*. at 56.

Bayou Shores argues that *St. Johns* and *Hospital Staffing* are inapplicable to this case because this case does not involve Medicare reimbursements. This is irrelevant. In *St. Johns* and *Hospital Staffing*, the *Medicare decisions* at issue involved Medicare reimbursements. The courts in those cases correctly held that they lacked subject matter jurisdiction over those matters and correctly refused to touch those issues. In this case, the *Medicare decision* at issue relates to the continued existence of Bayou Shores' Medicare and Medicaid Provider Agreements. The Bankruptcy Court lacked subject matter jurisdiction in this case to touch that issue. But that is exactly what the Bankruptcy Court did by issuing a Confirmation Order assuming the Medicare and Medicaid Provider Agreements.

In another attempt to avoid the applicability of these cases, Bayou Shores argues that the assumption of the Medicare and Medicaid Provider Agreements as executory contracts, unlike claims regarding Medicare reimbursements, constitute core bankruptcy proceedings per 28 U.S.C. § 157(b) and therefore necessarily fall within the jurisdiction of the Bankruptcy Court. [Doc. 69 at 18]. This is too simplistic. The mere fact that a matter generally constitutes a core proceeding under bankruptcy law does not permit a bankruptcy court to violate the prohibition set forth in 42 U.S.C. § 405(h). Indeed, *St. Johns* is a perfect illustration of this principle. The debtor's trustee argued in *St. Johns* that, because the assumption of the Medicare provider agreement constituted a "core proceeding" under bankruptcy law, the bankruptcy court had jurisdiction to determine the amount of any defaults pursuant to 11 U.S.C. § 365(b). *St. Johns*, 173 B.R. at 242. Finding that the determination of prepetition overpayments was "[p]art and parcel" of the debtor's trustee's request to assume the Medicare provider agreement, the court held that for the bankruptcy court to make such a determination "would be in contravention of 42 U.S.C. § 405(h)." *Id*. at 242-243. The jurisdictional bar created by 42 U.S.C. § 405(h) prevented

the court from conducting a "core proceeding." Likewise here, the fact that the assumption of executory contracts is a core proceeding does not change the fact that such a proceeding cannot be pursued where it violates 42 U.S.C. § 405(h).

In *St. Johns* the debtor's trustee argued that he was seeking only a "provisional" determination of overpayments, "without prejudice to or collateral estoppel effect on an administrative determination and review as provided in the Medicare statutes and regulations." *Id.* at 243. The limited nature of the relief sought was intended to "preserve the integrity of the Medicare regulatory scheme by allowing the review process to proceed." *Id*. The court rejected this argument, finding that even a "provisional" determination "would substantially impact upon the HCFA and restrict its ability to enforce its statutory recoupment remedies." *Id*. Bayou Shores is essentially making the same argument in this case, emphasizing that it was not asking the Bankruptcy Court to interfere with the Medicare administrative process. [Doc. 69 at 14-15]. Bayou Shores sought and received from the Bankruptcy Court what could be characterized as "provisional" relief from the action of HHS in the form of a delay of termination of the Provider Agreements through their assumption as executory contracts. As in *St. Johns*, this provisional relief would—and has—"substantially impacted" both AHCA and HHS and "restrict[ed] [their] ability to enforce [their] statutory . . . remedies." *Id*.

Notwithstanding all of Bayou Shores' attempts to cloud the issue, the Bankruptcy Court's Confirmation Order was in clear violation of 42 U.S.C. § 405(h). HHS determined that Bayou Shores' Medicare and Medicaid Provider Agreements should be terminated. Bayou Shores turned to the Bankruptcy Court to prevent this determination from taking effect, relying on the future prospect of not having enough funds to continue when Medicare and Medicaid dried up. The Bankruptcy Court gave Bayou Shores precisely what it wanted, first by issuing its Order on

September 5, 2014, prohibiting the termination of the Provider Agreements, and again by issuing its Confirmation Order mandating the assumption of these Provider Agreements over which it had no jurisdiction. If these actions do not violate 42 U.S.C. § 405(h), it is difficult to imagine what would.

**III.   The uncodified provision of law clarifying the scope of 42 U.S.C. § 405(h) must control.**

Any doubt regarding the applicability of 42 U.S.C. § 405(h) to bankruptcy court jurisdiction is resolved by reference to the amending legislation in which Congress made explicit that the 1984 amendments were not intend to alter "any right, liability, status, or interpretation which existed" under the previous legislation. Deficit Reduction Act of 1984, § 2664(b), Pub. L. No. 98–369, 98 Stat. 494, 1171–72 (1984). The prior legislation undeniably precluded bankruptcy courts from asserting jurisdiction over Medicare decisions. *See St. Johns*, 173 B.R. at 244 (prior version of § 405(h) "specifically barred bankruptcy jurisdiction.") Thus, 42 U.S.C. § 405(h) still precludes bankruptcy court jurisdiction. Any other reading would result in a significant changes to "right[s], liability[ies], status[es], [and] interpretation[s]" in contravention of § 2664(b) of Public Law 98-369. 98 Stat. at 1171–72.

Contrary to Bayou Shores' attempts to characterize § 2664(b) as something akin to legislative history, uncodified provisions of law have the full force of law. *See U.S. Nat'l Bank of Oregon v. Independent Ins. Agents of America, Inc.*, 508 U.S. 439, 448 (1993) ("Though the appearance of a provision in the current edition of the United States Code is 'prima facie' evidence that the provision has the force of law, 1 U.S.C. § 204(a), it is the Statutes at Large that provides the 'legal evidence of laws'"); *In re Blue Stone Real Estate, Constr. & Dev. Corp.*, 396 B.R. 555 (Bankr. M.D. Fla. 2008) (finding that uncodified provision of federal law is a "statute" for purposes of Rules of Bankruptcy Procedure). As such, 42 U.S.C. § 405(h) must be read in

6

conjunction with § 2664(b) of Public Law 98-369.  *See United States v. Professional Air Traffic Controllers Org.,* 653 F.2d 1134, 1138 (7th Cir. 1981) ("a newly-enacted statute 'is to be read in conjunction with the entire existing body of law'") (*quoting Kansas City, Mo. v. Federal Pacific Elec. Co.*, 310 F.2d 271, 275 (8th Cir. 1962), *cert. denied*, 371 U.S. 912 (1962)).  Indeed, none of the cases cited by Bayou Shores stands for the proposition that courts can ignore the effect of uncodified provisions of federal law.

IV. **If the Medicare Provider Agreement was terminated but the Medicaid Provider Agreement was not, the assumption of the Medicaid Provider Agreement was still improper.**

Bayou Shores mischaracterizes AHCA's argument regarding termination, default, and cure. [Doc. 69 at 21].  AHCA does not contend that the termination of *both* Provider Agreements would constitute a default preventing their assumption.  That would make no sense.  If both Provider Agreements were terminated (and AHCA contends that they were), then they could not be assumed because they were not executory contracts pursuant to 11 U.S.C. § 365.  The question of default and cure do not come into play in that scenario.  AHCA's argument regarding termination, default, and cure was clearly made *in the alternative*; that is, if this Court were to find that the July 22, 2014, notice effectively terminated the Medicare Provider Agreement but failed to effect the termination of the Medicaid Provider Agreement, then the Medic*aid* Provider Agreement would be in default as a result of the termination of the Medic*are* Provider Agreement.  This is because both federal and Florida law require as a matter of law the termination of a Medicaid Provider agreement when the Medicare Provider agreement is terminated.  *See* 42 U.S.C. § 1396a(a)(39); § 409.913(14), Fla. Stat.  Such a default is not subject to cure because Bayou Shores has no power to reinstate its Medicare Provider Agreement, nor any right to have it reinstated.  Because Bayou Shores could neither cure nor give adequate assurance that it will promptly cure the termination of its Medicare Provider Agreement, its

Medicaid Provider Agreement would thus be rendered *unassumable* pursuant to 11 U.S.C. § 365(b)(1).  Thus, in the alternative scenario presented by Bayou Shores in which even if the Medicare Provider Agreement was terminated, the Medicaid Provider Agreement was not, the Bankruptcy Court still erred in ordering the assumption of the Medicaid Provider Agreement.

### CONCLUSION

For the foregoing reasons, as well as those set forth in AHCA's Appellant's Brief [Doc. 41], the assumption of the Medicare and Medicaid Provider Agreements in the Bankruptcy Court's Confirmation Order should be reversed.

The State of Florida, Agency for Health Care Administration,

Respectfully submitted this 16th day of June 2015.

AGENCY FOR HEALTH CARE ADMINISTRATION
STUART F. WILLIAMS, GENERAL COUNSEL

/s/ Leslei G. Street_____
LESLEI G. STREET, ESQUIRE
Chief Litigation Counsel
Florida Bar I.D. No. 0962023
Leslei.Street@ahca.myflorida.com

/s/ Andrew T. Sheeran_____
ANDREW T. SHEERAN, ESQUIRE
Assistant General Counsel
Florida Bar I.D. No. 0030599
Andrew.Sheeran@ahca.myflorida.com
Agency for Health Care
 Administration
2727 Mahan Drive, Mail Stop #3
Tallahassee, Florida 32308
Telephone: (850) 412-3630
Facsimile: (850) 922-6484

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 16th day of June 2015 a true and correct copy of the foregoing was filed with the Court using the CM/ECF System which provided electronic notice to counsel of record.

        /s/ Andrew T. Sheeran
        ANDREW T. SHEERAN