**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

In re:

BAYOU SHORES SNF, LLC,                         CASE NO: 8:14-bk-9521-MGW

      Debtor.
_____/

FLORIDA AGENCY FOR HEALTH CARE
ADMINISTRATION and THE UNITED         CASE NO: 8:14-cv-02816-T-30
STATES OF AMERICA, ON BEHALF           (Lead Case) as consolidated with
OF THE SECRETARY OF THE UNITED        8:14-cv-02617-T-30;
STATES DEPARTMENT OF HEALTH           8:15-cv-00103-T-30; and
AND HUMAN SERVICES,                         8:15-cv-00128-T-30

      Appellants,

v.

BAYOU SHORES SNF, LLC,

      Appellee.
_____/

# ORDER

THIS CAUSE came before the Court on appeal of the Bankruptcy Court's entry of an injunction prohibiting any action to terminate the Debtor's Medicare and Medicaid provider agreements (the September 5, 2014 Order) and subsequent entry of a confirmation order that ordered the assumption of the Medicare and Medicaid provider agreements (the Confirmation Order) (collectively, the "Orders"). The Court consolidated four appeals related to the Orders. The appeals present numerous arguments; the heart of the appeals,

however, deals with the Bankruptcy Court's jurisdiction to enjoin the termination of and later order the assumption of the Debtor's Medicare and Medicaid provider agreements. The Court concludes that the Bankruptcy Court's Orders violated the Medicare jurisdictional bar set forth in 42 U.S.C. § 405(h); this jurisdictional bar moots any remaining arguments on appeal.

The Court has jurisdiction to hear this bankruptcy appeal under 28 U.S.C. § 158(a).

## STANDARD OF REVIEW

A district court reviews a bankruptcy court's findings of fact for clear error and conclusions of law *de novo*. *See In re JLJ, Inc.*, 988 F.2d 1112, 1116 (11th Cir. 1993).

## BACKGROUND

Although the disposition of the consolidated appeals turns solely on a question of law, a brief summary of the background facts is helpful. The Debtor Bayou Shores SNF, LLC operates a skilled nursing facility, the Rehabilitation Center of St. Petersburg. Most of the Debtor's patients have Alzheimer's disease, dementia, or other serious psychiatric conditions; it is one of the few facilities in the area that accommodates patients with challenging psychiatric needs.

The Debtor provides Medicare and Medicaid services through provider agreements issued by the federal and state government under the Social Security Act's Medicare and Medicaid provisions. Most of the Debtor's patients are on Medicare or Medicaid. Over ninety percent of the Debtor's revenue is derived from Medicare and Medicaid.

A skilled nursing facility like the Debtor must comply with the requirements set forth in 42 C.F.R. Part 483, Subpart B, to receive payment under the Medicare and Medicaid programs. As such, the Debtor is subject to surveys conducted by the Centers for Medicare and Medicaid Services ("CMS"), an agency of the United States Department of Health and Human Services. CMS may take certain actions, including termination of the Medicare and Medicaid provider agreements, if a survey reflects that a facility is not compliant with the applicable regulations.

The Agency for Health Care Administration ("AHCA"), the Florida state agency that performs nursing home surveys and that administers the Medicaid program in Florida, conducted surveys of the Debtor in approximately February, March, and July of 2014. Each time, the Debtor was cited for deficiencies and determined to be in noncompliance.[1] Ultimately, based on AHCA's July 2014 survey, CMS exercised its discretion to terminate the Debtor's Medicare provider agreement.

In a letter dated July 22, 2014, CMS notified the Debtor that AHCA's survey demonstrated that the Debtor was not in substantial compliance with Medicare and Medicaid requirements and that the conditions constituted immediate jeopardy to residents' health and

---

[1] The facts surrounding the surveys, CMS' determinations of noncompliance, and the Debtor's actions in response to same are outlined in the Bankruptcy Court's "Memorandum Opinion and Order on Confirmation" and need not be repeated here because they are not relevant to the Court's conclusion that the Bankruptcy Court lacked jurisdiction to take action related to the termination of the Medicare and Medicaid provider agreements. (Dkt. 45-36).

safety. The letter stated that the Debtor's "Medicare provider agreement will be terminated at 11:59 pm on August 3, 2014" and that Medicare and Medicaid payments would continue for only 30 days from that date. (Dkt. 1-20).

On August 1, 2014, the Debtor filed a Verified Complaint for Injunctive Relief and Mandamus in the federal district court for the Middle District of Florida (Tampa Division). Specifically, in that action, *Bayou Shores SNF LLC v. Sylvia Mathews Burwell, et al.*, Case No. 8:14-cv-1849-T-33-MAP (the "Civil Action"), the Debtor sought and obtained an *ex parte* temporary restraining order ("TRO") that enjoined CMS from terminating the Medicare and Medicaid provider agreements through August 15, 2014.

On August 11, 2014, the Secretary moved to dismiss the Civil Action for lack of subject matter jurisdiction. On August 15, 2014, the district court granted the United States' motion, dismissed the Civil Action, and dissolved the TRO. The district court concluded that Medicare's jurisdictional bar, 42 U.S.C. § 405(h), precluded the court from exercising jurisdiction over the controversy prior to the Debtor exhausting its administrative remedies. It was undisputed that the Debtor had not exhausted its administrative remedies.

Less than one hour after the district court issued its order in the Civil Action dissolving the TRO, the Debtor filed a Voluntary Petition for Chapter 11 bankruptcy. In the bankruptcy action, the Debtor filed an emergency motion to enjoin CMS and AHCA from terminating the Debtor's Medicare and Medicaid provider agreements. On August 25, 2014, the Bankruptcy Court entered an order provisionally granting the Debtor's motion subject

to a final evidentiary hearing.  (Dkt. 1-15).  The Bankruptcy Court noted that it had jurisdiction to consider the motion under 28 U.S.C. § 1334 and that the Debtor had made a "prima facie showing that [its] Medicare and Medicaid provider agreements [were] property of the estate sufficient to warrant the entry of an order providing that the automatic stay [prohibited] CMS, AHCA, and/or any managed care provider from taking action to terminate the Debtor's Medicare and/or Medicaid provider agreements."  *Id.*

On August 26, 2014, the Bankruptcy Court held an evidentiary hearing.  On September 5, 2014, based on the evidence presented at the evidentiary hearing, the Bankruptcy Court issued its "Order Granting Debtor's Emergency Motion to Enforce the Automatic Stay and/or for an Order Pursuant to 11 U.S.C. § 105, Prohibiting Any Action to Terminate Debtor's Medicaid and Medicare Provider Agreements, to Deny Payment of Claims and/or to Relocate Residents" (the "September 5, 2014 Order).  The September 5, 2014 Order granted the Debtor's motion "for the reasons stated in open Court."  (Dkts. 1-31 and 1-2).

At the August 26, 2014 hearing, the Bankruptcy Court noted that it had jurisdiction under section 1334.  It also concluded that the Medicare provider agreement was not terminated prior to the Debtor's bankruptcy filing; as such, the provider agreement was an executory contract that could be assumed.  (Dkt. 1-31).  The Bankruptcy Court stated that it had a responsibility to "look at the big picture," that is, "the welfare and concern for the

patients." *Id.* at 116:6-11. Based on the testimony presented at the evidentiary hearing, the Bankruptcy Court concluded that the Debtor's patients were not "in any danger." *Id.*

Both AHCA and the United States of America, on behalf of the Secretary of the United States Department of Health and Human Services ("Secretary") appealed the September 5, 2014 Order (the "First Appeals). These are the First Appeals in front of this Court. In relevant part, both AHCA and the Secretary argue that the Bankruptcy Court lacked jurisdiction to enjoin the terminations of the Debtor's provider agreements.

During the pendency of the First Appeals, the Bankruptcy Court issued the Confirmation Order that asserted jurisdiction over, and ordered the assumption of, the Debtor's Medicare and Medicaid provider agreements. Both AHCA and the Secretary appealed the Confirmation Order (the "Second Appeals") and argue, in relevant part, that the Bankruptcy Court was without jurisdiction to take any action related to the Medicare and Medicaid provider agreements. These are the Second Appeals before this Court. The jurisdictional arguments in the First and Second Appeals are essentially the same: 42 U.S.C. § 405(h), the Medicare jurisdictional bar, precluded the Bankruptcy Court from taking *any* action related to the provider agreements until the Debtor had exhausted its administrative remedies.

As explained below, the Bankruptcy Court erred as a matter of law because the jurisdictional bar in section 405(h) precluded the Bankruptcy Court from delaying or

preventing the effect of CMS' determination that the provider agreements should be terminated.

## DISCUSSION

In its "Memorandum Opinion and Order on Confirmation," the Bankruptcy Court concluded, as a matter of law, that it had jurisdiction under 28 U.S.C. § 1334. Specifically, under section 1334, the Bankruptcy Court held that it had jurisdiction "over all civil proceedings arising under title 11, arising in a case under title 11, or related to a proceeding under title 11." (Dkt. 45-36). The Bankruptcy Court noted that "any dispute over the Debtor's ability to assume the Medicare provider agreement is 'related to' [the] title 11 case since the outcome of that dispute could conceivably have an effect on the Debtor's bankruptcy estate." *Id.*[2] The Court finds error in this conclusion of law because it ignores the jurisdictional bar contained in the Medicare Act. The Bankruptcy Court exceeded its subject matter jurisdiction when it interfered with CMS' termination of the provider agreements.

Under 42 U.S.C. § 1395cc(h)(1), an institution, like the Debtor in this case, that is "dissatisfied with a determination by the Secretary ... described in subsection (b)(2) of this section shall be entitled to a hearing thereon by the Secretary ... and to judicial review of the Secretary's final decision *after such hearing* as is provided in section 405(g) of this title."

---

[2] As stated above, the Bankruptcy Court's prior rulings also implied that it was exercising jurisdiction under section 1334.

(emphasis added). The referenced subsection (b)(2) outlines the Secretary's power to terminate a Medicare provider agreement in certain situations, including situations in which "the provider fails to comply substantially with the provisions of the agreement, [or] with the provisions of [the Medicare Act] and regulations thereunder." 42 U.S.C. § 1395cc(b)(2)(A).

Upon an exhaustion of the administrative remedies and upon the issuance of a final agency decision by the Secretary, a provider may seek judicial review. *See* 42 U.S.C. § 405(g). Under section 405(g): "Any individual, after any final decision of the [Secretary] made after a hearing to which he was a party ..., may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the [Secretary] may allow." Thus, with respect to a Medicare dispute, the judicial review provision at section 405(g) is the "exclusive source of federal court jurisdiction." *See Jackson v. Astrue*, 506 F.3d 1349, 1353 (11th Cir. 2007).

Clearly, the Secretary's decision to terminate the Debtor's provider agreements is an issue that arises under Medicare because termination of a provider agreement is specifically covered under the Medicare statute and regulations. Thus, a court, including the Bankruptcy Court here, is barred from exercising jurisdiction over the parties' dispute except for conducting judicial review of the Secretary's final decision. The Medicare Act incorporates 42 U.S.C. § 405(h) under 42 U.S.C. § 1395ii. Section 405(h) states: "[n]o findings of fact or decision of the [Secretary] shall be reviewed by any person, tribunal, or governmental agency except as herein provided" and no action against the Secretary "shall be brought

under section 1331 or 1346 of Title 28 to recover on any claim arising under" the Medicare Act.  There is no jurisdiction for a court to interpose itself in a provider's termination from the Medicare and Medicaid programs except to provide judicial review under section 405(g) *after* administrative remedies have been exhausted and the Secretary has issued a final agency decision.

Here, the Debtor did not exhaust its administrative remedies with respect to the Secretary's decision to terminate its provider agreements.  Rather, after the district court concluded that it lacked jurisdiction and dissolved the TRO, the Debtor filed for Chapter 11 bankruptcy and argued that the provider agreements were property of the estate.  The Bankruptcy Court then enjoined any termination of the provider agreements which essentially thwarted the administrative process and allowed the Debtor to circumvent its administrative obligations.  But the Bankruptcy Court was without jurisdiction to interpose itself in the process, including entering an injunction to enjoin the provider agreements' termination.  *See Bayou Shores SNF, LLC v. Burwell*, No. 8:14-cv-1849-T-33MPA, 2014 WL 4059900 (M.D. Fla. Aug. 15, 2014) (holding that the district court was without jurisdiction to enjoin the termination of the provider agreements prior to exhaustion of administrative remedies); *Cathedral Rock of North Coll. Hill v. Shalala*, 223 F.3d 354 (6th Cir. 2000) (same); *Affil. Prof'l Home Health Care v. Shalala*, 164 F.3d 282 (5th Cir. 1999) (same); *Livingston Care Ctr., Inc. v. United States*, 934 F.2d 719 (6th Cir. 1991) (same); *Americana Healthcare Corp. v. Schweiker*, 688 F.2d 1072 (7th Cir. 1982) (same); *Forum

*Healthcare Grp., Inc. v. Ctrs. for Medicare & Medicaid Servs.*, 495 F. Supp. 2d 1321 (N.D. Ga. 2007) (same); *Trade Around the World of PA v. Shalala*, 145 F. Supp. 2d 653 (W.D. Pa. 2001) (same); *Northwest Healthcare, L.P. v. Sullivan*, 793 F. Supp. 724 (W.D. Tex. 1992) (same).

The Bankruptcy Court concluded that its jurisdiction was not barred under section 405(h) because section 405(h) does not expressly proscribe bankruptcy jurisdiction under 28 U.S.C. § 1334. The Eleventh Circuit has not directly addressed this issue. But the majority of courts that have considered the omission of section 1334 (and other jurisdictional grants) from section 405(h) have examined Congress' intent when it enacted the jurisdictional bar and concluded that the omission of section 1334 and other jurisdictional grants (like section 1332) was inconsistent with that intent. The Court agrees with this majority view.

"When originally enacted, the third sentence in section 405(h) specifically prohibited any action under 'Section 24 of the Judicial Code of the United States.'" *In re Hosp. Staffing Servs., Inc.*, 258 B.R. 53, 57-58 (Bankr. S.D. Fla. 2000). Section 24 (codified at 28 U.S.C. § 41) contained virtually all jurisdictional grants, including bankruptcy jurisdiction. *See* Amendments to Title II of the Social Security Act, § 201, 53 Stat. 1362, 1371 (1939). Jurisdictional grants were placed in separate sections when the judicial code was subsequently revised in 1948. *See* Pub.L.No. 80-773, 62 Stat. 869, 930-35 (1948).

In 1984, Congress revised the Social Security Act's jurisdictional bar, 42 U.S.C. § 405(h) and replaced "Section 24" with "Section 1331 or 1346." Upon this amendment,


Congress stated "none of such amendments shall be construed as changing or affecting any right, liability or status or interpretation which existed." Pub.L. 98–369, § 2664(b), 98 Stat. 1171-72 (1984).

"Many courts have analyzed the amendments to section 405(h) and determined that the jurisdictional bar applies to all cases in which administrative remedies have not been exhausted, and not simply those in which jurisdiction is asserted under § 1331 or § 1346." *In re Hosp. Staffing Servs.,* 258 B.R. at 57-58 (citing *Midland Psychiatric Assocs., Inc. v. United States,* 145 F.3d 1000, 1004 (8th Cir.1998); *Bodimetric Health Servs., Inc. v. Aetna Life & Cas.,* 903 F.2d 480, 488-89 (7th Cir.1990); *Total Renal Labs., Inc. v. Shalala,* 60 F. Supp. 2d 1323, 1331 (N.D. Ga. 1999)).

In *Bodimetric Health Services*, the Seventh Circuit analyzed in detail the technical amendments to section 405(h) and rejected the argument that diversity jurisdiction, 28 U.S.C. § 1332, could be used to evade section 405(h)'s jurisdictional bar because section 405(h) did not expressly reference section 1332. The same analysis and conclusion have applied in the bankruptcy context. *See In re Hosp. Staffing Servs.,* 258 B.R. at 57-58 ("It is clear that the Bankruptcy Court considered the history of § 405(h) and the cases analyzing § 405(h) and correctly concluded that it had no jurisdiction over Appellant's Complaint."); *In re St. Johns Home Health Agency, Inc.,* 173 B.R. 238, 244 (Bankr. S.D. Fla. 1994) ("[T]he omission of 28 U.S.C. § 1334 from the amended version of 42 U.S.C. § 405(h) was not meant to create bankruptcy jurisdiction where it previously was precluded. The intent and effect of the 1984

amendments are that bankruptcy court jurisdiction under § 1334 for claims arising under the Medicare Program is and remains precluded by § 405(h)."); *see also In re St. Mary Hosp.*, 123 B.R. 14, 17 (E.D. Pa. 1991).

The Bankruptcy Court dismissed these decisions as "improperly considering the legislative history of a statute when the statute's text is plain and unambiguous." (Dkt. 45-36). The Court respectfully disagrees and aligns itself with the majority view. As no other independent basis for jurisdiction existed to enjoin and order the assumption of the Medicare and Medicaid provider agreements, the Bankruptcy Court's Orders, to the extent that they impacted those agreements, must be reversed.

Finally, it is worth noting that the Court need not determine the exact timing of any termination of the provider agreements (a hotly contested issue on appeal) because, even if the provider agreements had not been terminated prior to the bankruptcy filing, any action by the Bankruptcy Court to prevent or delay the effect of the Secretary's determination, including a Confirmation Order ordering the assumption of the provider agreements, constituted a breach of section 405(h)'s jurisdictional bar and was thus in excess of the Bankruptcy Court's subject matter jurisdiction.

## **CONCLUSION**

The Bankruptcy Court erred as a matter of law when it exercised subject matter jurisdiction over the treatment of the provider agreements after the Secretary had determined that the provider agreements would be terminated. The Bankruptcy Court was without

jurisdiction under the Medicare jurisdictional bar to issue the injunction that enjoined the Secretary's termination of the provider agreements and this error continued when the Bankruptcy Court subsequently authorized the Debtor to assume the provider agreements.

It is therefore **ORDERED AND ADJUDGED** that:

1. The September 5, 2014 Order and Confirmation Order are reversed to the extent explained herein.[3]

2. This appeal is remanded to the Bankruptcy Court for further proceedings.

3. The Clerk of Court is directed to close this case and terminate any pending motions as moot.

**DONE** and **ORDERED** in Tampa, Florida on June 26, 2015.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Bankruptcy Judge Michael Williamson
Bankruptcy Clerk of Court
Counsel/Parties of Record

*S:\Even\2014\14-cv-2816.bankappeal-reverse.wpd*

---

[3] Notably, the reversal of the Confirmation Order is only with respect to the assumption of the Debtor's Medicare and Medicaid provider agreements.